IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JAMES ARTHUR STOKES III, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:18cv49-MHT-WC |
| ) | |
| M&T BANK, BARRETT DAFFIN ) | |
| FRAPPIER TURNER & ENGEL, LLP, ) | |
| ) | |
| Defendants. ) | |

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is Plaintiff's Second Amended Complaint.[1] Doc. 13. This case has been referred to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate." Doc. 4. Plaintiff requested and was granted leave to proceed *in forma pauperis* (Docs. 2 and 6), which obligates the court to undertake review of Plaintiff's Complaint pursuant to the provisions of 28 U.S.C. § 1915(e). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) in non-prisoner action). That statute instructs the court to dismiss any action wherein it is determined that an *in forma pauperis* applicant's suit is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B)(i)–(iii).

---

[1] All citations or references to "Second Amended Complaint" or "Complaint" in this Recommendation will refer to Plaintiff's Second Amended Complaint (Doc. 13).

Upon review of the Second Amended Complaint, the court finds that this case is due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because it is frivolous and fails to state a claim on which relief may be granted.

## I.    PLAINTIFF'S CLAIMS

On November 7, 2017, Defendant M&T Bank ("M&T") foreclosed on Plaintiff's property located at 7391 County Road 258, Clyde, Texas 79510. Doc. 13, ¶¶ 8, 10.  M&T hired Defendant Barrett Daffin Frappier Turner & Engel, LLP ("Barrett Daffin"), a law firm, as debt collectors to enforce the promissory note and deed of trust, and the "enjoined defendants" then seized the property without establishing a lawful and valid claim. *Id.* ¶¶ 9-10.  M&T then levied a judgment against Plaintiff, which is "presently being recorded in the public records of credit reporting agencies/bureaus."  *Id.* ¶ 11.  This lawsuit arises out of the foreclosure, M&T's failure to respond to certain document requests by Plaintiff, and efforts to collect the debt against him.  Plaintiff's Complaint, as amended, sets forth seven claims against Defendants:

### A.    Claim One (Violations of TILA, the UCC Statute of Frauds, and 18 U.S.C. § 1348; Constructive Fraud)

Plaintiff executed a promissory note and deed of trust with Bank of America in 2007. Id. ¶ 12.  In 2011, these documents were "securitized and sold/assigned to the currently alleged lender M&T Bank without the plaintiff's proper knowledge or consent." *Id.*  He claims the two documents he signed were, in fact, security instruments governed by the UCC, which makes him a party to an investment contract that was not disclosed to him. *Id.* ¶¶13–14.  He asserts that "the defendant" executed an unlawful loan modification

and made Plaintiff a party to a Pooling and Servicing Agreement ("PSA") that was not "subscribed to or memorialized" by him, thus rendering the promissory notes executed by Plaintiff "void and unenforceable *ab initio*." [2] *Id.* ¶¶ 15–16. Plaintiff claims these actions violate the Truth in Lending Act ("TILA"), the UCC Statute of Frauds, and 18 U.S.C. § 1348 and that Defendant's actions constitute constructive fraud. *Id.* ¶ 17.

### B.   Claims Two through Five (Failure to Respond to Document Requests)

Claims Two through Five allege that M&T failed to respond to certain document requests by Plaintiff. Plaintiff alleges that he sent M&T a cease and desist order, "invoices" citing Defendant's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), and a notice of intent to sue. *Id.* ¶18. He also made the following document requests:

(1)   Claim Two: A request that M&T "prove/validate through verified statements of accounting the alleged debt owed by the plaintiff" and "that the defendant show the plaintiff specifically where M&T Bank provided a 'loan' to the plaintiff, where the defendant paid any consideration to support the alleged contract, or where the defendant has, in any way, incurred any financial loss or damage by the plaintiff's non-payment." *Id.* ¶¶ 18–19.

(2)   Claim Three: A request that M&T prove "a) its holder in due course status and b) if the defendant has followed the proper protocol in establishing a qualified

---

[2] Plaintiff does not identify the particular defendant alleged to have executed an unlawful loan modification. Further, it is unclear from the Complaint whether Plaintiff is alleging that the unlawful loan modification occurred when Bank of America, a non-party, sold the promissory note and deed of trust to M&T in 2011, or if he is alleging that M&T later entered into a Pooling and Serving Agreement with respect to his loan. However, because Bank of America is not a defendant and M&T is the only defendant identified anywhere in Claim One, the undersigned presumes for purposes of this Recommendation that Plaintiff is alleging a claim against M&T.

3

trust." *Id.* ¶ 20.  This request is based on Plaintiff's contention that M&T was required to file a tax return with the IRS to qualify as a real estate investment trust in order to foreclosure lawfully on Plaintiff's property and that it failed to do so. *Id.* ¶¶ 21, 26.  He claims M&T took the promissory note and deed of trust subject to the claims and defenses of Plaintiff as true and rightful owner; thus, it was unlawful for M&T to hold, negotiate, or transfer the security instruments and, as a result, "there lawfully can be no funds within the corpus of the trust. *Id.* ¶¶ 23–24.  Therefore, M&T does not have "a lawful leasor-leasee agreement with the plaintiff because the trust does not own the required security instruments nor did the trust fund the transaction." *Id.* ¶ 26.  Accordingly, M&T has no standing to charge plaintiff with rent payments or foreclose and evict him from the property. *Id.* ¶ 26.

   (3) <u>Claim Four</u>: A request that M&T prove its standing as a creditor in the original loan and the securitization of the promissory notes and subsequent sale on the secondary market. *Id.* ¶ 27.  This request is based on his contention that "[a]ccounting law and principles show that it was in fact the plaintiff who funded the entire transaction" because "when a note/contract/financial asset is deposited with a bank/deposit institution it becomes a cash item to said institution, and a cash receipt to depositor (i.e., the plaintiff)." *Id.* ¶ 28.  Thus, Plaintiff claims he "donated" funds to a "constructive trust" created by the securitization of the promissory notes, making Plaintiff the owner of the proceeds acquired by Defendant on the secondary market. *Id.* ¶ 32.

   (4) <u>Claim Five</u>: A request that M&T prove it "indeed paid the required taxes stipulated by the Internal Revenue Code." *Id.* ¶ 34.  This request is based on Plaintiff's

4

claim that M&T failed to pay the required taxes, which means "no lien can attach," the promissory note and deed of trust are unenforceable, and M&T unlawfully billed Plaintiff for taxes it owed. *Id.* ¶¶ 37–39.

Plaintiff does not cite a statute or law requiring M&T to provide him with the documents he describes in the above requests. He merely complains that M&T ignored or unsatisfactorily responded to his requests.

### C. Claims Six and Seven (Violations of FDCPA, FCRA, and Due Process; Public Slander)

Claims Six and Seven relate to attempts to collect payment on Plaintiff's outstanding loan. In Claim Six, Plaintiff alleges M&T and Barrett Daffin harassed him with collection attempts "despite being issued a cease and desist order" and "fail[ed] to properly verify and validate the alleged debt and ceas[e] attempts until establishing a valid claim." *Id.* ¶¶ 41–42. Instead of complying with this request, Defendants proceeded with a judicial foreclosure in violation of the FDCPA and his due process rights. Id. ¶ 42–43. In Claim Seven, he contends that M&T negatively reported a deficiency judgment to credit reporting agencies or debt collectors without first validating the debt, which Plaintiff claims violates the FCRA and constitutes "public slander." *Id.* ¶ 44.

## II. STANDARD OF REVIEW

When determining whether to dismiss an action, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). In order to state a claim upon which

relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure, which requires that a plaintiff submit a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A pleading is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged

6

in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556. But, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Although courts liberally construe pro se complaints, a court cannot rewrite a complaint to include the facts that are not alleged and claims that are not articulated. *Sanford v. Robins Fed. Credit Union*, No. 5:12-CV-306 MTT, 2012 WL 5875712, at *2 (M.D. Ga. Nov. 20, 2012) (citing *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006)). A pro se plaintiff is still required to include allegations for each material element of his claims, and bare legal conclusions are insufficient. *Sanford*, 2012 WL 5875712, at *2 (citing *Davilla v. Delta Air Lines,* 326 F.3d 1183, 1185 (11th Cir. 2003); *McNeil v. United States,* 508 U.S. 106, 113 (1993) (stating that "procedural rules in ordinary civil litigation" should not be interpreted "so as to excuse mistakes by those who proceed without counsel")).

## III.   DISCUSSION

### A.   Claim One (TILA, UCC Statute of Frauds, and 18 U.S.C. § 1348 Violations)

Claim One is based on Plaintiff's allegations that (1) executing promissory notes made him a party to an investment contract that was not disclosed to him and (2) M&T executed an unlawful loan modification and made Plaintiff an undisclosed party to a PSA that was not "subscribed or memorialized by him." Doc. 13 ¶¶ 18–20.  He claims this conduct violates TILA, the UCC Statute of Frauds, and 18 U.S.C. § 1348,[3] making the promissory notes he signed "unenforceable *ab initio*."  *Id.* at ¶¶ 21–22.

Plaintiff has failed to allege facts supporting a claim that M&T violated TILA.  He makes the conclusory statement that the promissory notes he signed were somehow converted into undisclosed "investment contracts," and he fails to plead facts showing that the pooling of his loan actually modified the original loan, made him an undisclosed party to the PSA, was required to be "subscribed or memorialized" by him, or voided the original promissory notes.  Further, he fails to cite a single provision of TILA that prohibits M&T's alleged conduct.  Thus, Plaintiff's statements are mere "labels and conclusions," *Twombly*, 550 U.S. at 555, and they are not factually plausible because they do not permit a court to reasonably infer that M&T's alleged misconduct was unlawful. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

---

[3] Plaintiff also alleges that M&T's actions constitute constructive fraud. Doc. 13 ¶ 17.  There is no federal constructive fraud statute, so this claim could only survive as a cause of action under state law.  This state law claim and the claim of slander (raised in Claim Seven) are addressed in Section III.D., *infra*.

8

This claim also fails under the two other theories asserted by Plaintiff.  First, with respect to the UCC Statute of Frauds claim, "[t]he UCC, itself, is not the law of any state, nor is it federal law.  In order to support a cause of action, a plaintiff must rely on a state's codification of the UCC." *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004); *see also Garren v. Palmer*, No. 10cv3705, 2010 WL 11647055, at *2 (N.D. Ga. Dec. 14, 2010), *report and recommendation adopted,* No. 10cv3705, 2011 WL 13318827 (N.D. Ga. Jan. 19, 2011) (noting that the UCC has not been adopted as federal law and does not create a federal cause of action); *Ojemeni v. Sanchez*, No. 10cv4100, 2010 WL 5684400, at *3 (N.D. Ga. Dec. 20, 2010), *report and recommendation adopted,* No. 10cv4100, 2011 WL 345832 (N.D. Ga. Feb. 1, 2011) (recognizing in context of federal question jurisdiction that the U.C.C. is not a federal statute); and *Taylor v. Wachovia Mortg. Corp.,* No. 1:07–cv–2671–TWT, 2009 WL 249353, *8 (N.D. Ga. Jan. 30, 2009) (same).  Plaintiff has failed to rely on a state's codification of the UCC in this case, so any claim based on the UCC Statute of Frauds is due to be dismissed.

Likewise, Plaintiff has no cause of action under 18 U.S.C. § 1348.  That statute is a criminal statute with no private cause of action. *Smith v. Critelli's Auto Mart, LLC*, No. 15cv527, 2015 WL 13792265, at *5 (M.D. Fla. May 5, 2015)  (finding no private right of action under § 1348) (citations omitted).  Therefore, Plaintiff has no cause of action against Defendant under 18 U.S.C. § 1348.

Because Plaintiff has alleged no facts showing that M&T violated a provision of TILA and cannot maintain a cause of action under the UCC Statute of Frauds or 18 U.S.C.

9

§ 1348, Claim One is due to be dismissed because it is frivolous and fails to state a claim upon which relief may be granted.

### B.     Claims Two through Five (Failure to Respond to Document Requests)

As mentioned above, Claims Two through Five are based on M&T's failure to produce certain documents to Plaintiff.  However, Plaintiff has identified no statute or regulation requiring M&T to respond to his particular requests, no right that was allegedly violated by a failure to respond, and no cause of action arising out of a failure to respond.  He simply complains that M&T ignored or unsatisfactorily responded to his requests.  Plaintiff may have intended to bring these claims under TILA since Claim One was based partly on TILA, but, again, Plaintiff has cited no TILA regulation that requires M&T to furnish the requested information.  This court cannot "rewrite [his] complaint to include the facts that are not alleged and claims that are not articulated," and these claims warrant dismissal. *Sanford v. Robins Fed. Credit Union*, No. 5:12-CV-306 MTT, 2012 WL 5875712, at *2 (M.D. Ga. Nov. 20, 2012) (citing *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006)).

Moreover, the document requests in Claims Two through Five are based on a theory that Plaintiff's debt has somehow been extinguished or the promissory notes are unenforceable, which is similar to theories he and other plaintiffs have advanced based on Public Law 73-10.[4]  For example, he demands that M&T prove that it actually loaned

---

[4] Plaintiff has four other lawsuits pending in this Court based on Public Law 73-10, the purpose of which was to "assure uniform value to the coins and currencies of the United States." H.J. Res. 192, 73rd Cong. (1933), enacted by Pub.L. No. 73–10, 48 Stat. 112–13 (1933).  This law suspended the gold standard in the United States, but it is inexplicably relied upon by plaintiffs seeking to avoid paying debts. *See Sanford v. Robins Fed. Credit Union*, No. 12cv306, 2012 WL 5875712, at *3 (M.D. Ga. Nov. 20, 2012) (citations omitted).

money or paid consideration to support the contract. He further claims he is the true owner of the promissory notes; that he "funded" the entire transaction because the promissory note he signed became a cash item to M&T; he donated funds when the notes were securitized; and the notes are unenforceable because M&T has not proven that it paid certain taxes. These types of claims have been addressed by courts within the Eleventh Circuit and across the county.

In *Sanford v. Robins Federal Credit Union*, *supra*, the plaintiff claimed to have discharged debts with two "electronic funds transfer instruments." *Sanford*, 2012 WL 5875712, at *1. He claimed the defendant accepted the instruments by "operation of law" but did not release titles to the vehicles serving as security for the debts. *Id.* In finding that the plaintiff failed to state a claim upon which relief can be granted, the *Sanford* court stated:

> To some extent, it appears the Plaintiff hopes to advance a watered-down version of claims other plaintiffs have unsuccessfully attempted via Public Law 73-10, such as the "vapor money" theory, "unlawful money" theory, or "redemption" theory. *See McLaughlin v. CitiMortgage, Inc.,* 726 F. Supp. 2d 201 (D. Conn. 2010) (discussing these theories in depth and collecting cases that "universally and emphatically" reject them). Such claims are "equal parts revisionist legal history and conspiracy theory," *Bryant [v. Washington Mut. Bank,* 524 F. Supp. 2d 753, 758 (W.D. Va. 2007)], and share a common thread in their use by plaintiffs seeking to avoid debt repayment. These theories appear to all somehow rely on various supposed consequences flowing from the 1933 suspension of the gold standard.
>
> For example, one tenant of "redemption" theory suggests that the United States has been bankrupt since suspending the gold standard in 1933, and that, as a result, the dollar is nonredeemable. Citizens thus became creditors for a bankrupt system, and the Federal Reserve Note became a debt note with no intrinsic value—or so the story goes. *McLaughlin,* 726 F. Supp. 2d at 211.

---

Plaintiff's Complaint does not contain a specific count alleging violation of Public Law 73-10; however, in his prayer for relief, he claims Defendants' actions constitute violations of Public Law 73-10.

> Another variation suggests that when an individual executes a promissory note in favor of a bank, he has actually provided the bank "money." The bank then deposits this "money" into its own account, lists it as an asset on its ledger, and lends it back to individual. Through bookkeeping procedures, the bank has supposedly created money even though it does not actually have gold-backed funds available to lend, and the note is thus void from the outset. *See, e.g., Rudd v. KeyBank, N.A.,* 2006 WL 212096 (S.D. Ohio).
>
> …. Courts have widely rejected arguments seeking relief pursuant to theories based on Public Law 73–10. *See McLaughlin,* 726 F. Supp. 2d at 214 (collecting cases)….

*Sanford*, 2012 WL 5875712, at *3–4 (internal court document citations omitted). *See also Wilkerson v. Gozdan*, No. 14cv693-WKW, 2014 WL 4093279, at *5 (M.D. Ala. Aug. 19, 2014) (dismissing similar claim based on Public Law 73-10 where plaintiff purportedly satisfied a loan with a credit slip and promissory note).

In *Williams v. Skelly*, No. 17cv204, 2018 WL 2337310 (W.D. Ken. May 23, 2018), the court addressed this issue in the context of student loans. To satisfy a student loan with the U.S. Department of Education, the plaintiff sent a "contract/bond" (on which he was both the secured party and debtor) to the defendant. After it was dishonored, he filed a lawsuit arguing the debt should have been discharged under Public Law 73-10 and other statutes. In dismissing the plaintiff's claim, the *Williams* court determined that the plaintiff appeared to be asserting a form of "sovereign citizen" claim against the defendant, noting that "adherents of such claims or defenses believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Id.* at *2 (citations omitted). The court went on to state that complaints based on sovereign citizen theories may be dismissed "without extended argument." *Id.* (citations and omitted).

12

Although Plaintiff in this case does not specifically identify himself as a "sovereign citizen," he refers to himself as "a natural man and sentient being" (Doc. 13 ¶ 5) and is clearly advancing a sovereign citizen theory. *See Young v. PNC Bank, N.A.*, No. 16cv298, 2018 WL 1251920, at n.1 (N.D. Fla. Mar. 12, 2018) (noting that plaintiff did not identify himself as a sovereign citizen but his attempt to extinguish a lawful and legitimate debt under a bizarre legal theory bore the hallmarks of a sovereign citizen theory). Courts have consistently rejected the "outlandish legal theories" of sovereign citizens claims. *Id.*; *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (recognizing that courts routinely reject sovereign citizen legal theories as "frivolous"); *United States v. Benabe*, 654 F.3d 753, 761–67 (7th Cir. 2011) (discussing sovereign citizen arguments as having no validity in country's legal system and recommending that they be "rejected summarily, however they are presented"); *Lawrence v. Holt*, No. 18cv639, 2019 WL 1999783, at *2 (N.D. Ala. Apr. 12, 2019), *report and recommendation adopted,* No. 18cv639, 2019 WL 1989607 n.1 (N.D. Ala. May 6, 2019) (noting the Eleventh Circuit has repeatedly rejected sovereign citizen legal theories as frivolous); *Roach v. Arrisi*, 2016 WL 8943290, at *2 (M.D. Fla. 2016) (recognizing that sovereign citizen theories have been consistently rejected by courts and describing them as "utterly frivolous," "patently ludicrous," and a waste of the court's time "being paid for by hard-earned tax dollars") (citation omitted). Accordingly, Claims Two through Five in Plaintiff's Complaint are also due to be dismissed because they are frivolous sovereign citizen claims and fail to state a claim upon which relief can be granted.

### C.     Claims Six and Seven (FDCPA, FCRA, and Due Process Violations)

Plaintiff's Sixth and Seventh Claims are based entirely on the sovereign citizen theory that Plaintiff somehow satisfied his debt or never owed the debt created by the promissory notes. He states that Defendants harassed him with collection attempts "despite being issued a cease and desist order;" failed to properly verify the debt or establish a valid claim before proceeding with a judicial foreclosure; and reported his failure to repay loans to credit bureaus or to third party debt collectors without first validating the debt. Doc. 13 ¶¶ 41–42, 44.  However, Plaintiff fully acknowledges that he executed the promissory note and deed of trust in question. His only basis for claiming that collection attempts violated the FDCPA and FCRA is a sovereign citizen theory that he never owed or no longer owes the money to M&T.  Thus, Plaintiff's claims brought pursuant to the FDCPA and FCRA are not factually plausible and do not permit a court to reasonably infer that either Defendant's alleged misconduct was unlawful. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

The same is true for Plaintiff's due process claim.  Claim Six contains a cursory statement that Plaintiff's due process rights were violated, but he fails to state whether the claim is based on the Fifth Amendment or Fourteenth Amendment and fails to allege any conduct by a state or federal government actor. *See Pub. Utils. Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (recognizing that Fifth Amendment due process claims apply only to the federal government and not private persons); *Abner v. Mobile Infirmary Hosp.*, 149 F. App'x 857, 859 (11th Cir. 2005) (per curiam) (citing *Jeffries v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 922 (11th Cir. 1982) (noting settled rule that Fourteenth Amendment's

14

due process clause reaches only government action and not private action); *Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.*, 489 F. Supp. 2d 1362, 1370 (N.D. Ga. 2002) (citation omitted) (stating that due process does not exist between private parties). Because Plaintiff does not allege that Defendants are government actors, nothing in Plaintiff's Complaint allows the court to infer that Defendants violated Plaintiff's due process rights. Therefore, this claim is due to be dismissed.

### D.     State Law Claims

Plaintiff has alleged the state law claims of constructive fraud and slander. Doc. 13 ¶¶ 17, 44. Because the undersigned is recommending dismissal of Plaintiff's federal claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that they be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.    CONCLUSION

For the reasons stated above, the undersigned Magistrate Judge RECOMMENDS the following:

(1)    That this action be dismissed because Plaintiff's federal claims are either frivolous or fail to state a claim upon which relief may be granted, warranting dismissal with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), and because the state law claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3); and

(2)    That the Motion to Dismiss for Improper Venue (Doc. 16) filed by Defendant Barrett Daffin Frappier Turner & Engel, LLP be DENIED as moot.

It is further

ORDERED that the Plaintiff is DIRECTED to file any objections to the said Recommendation on or before **July 2, 2019**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of June, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE